David McREYNOLDS and Fritz Pappenheim, Plaintiffs,

v.

Robert K. CHRISTENBERRY, Postmaster, New York, New York, John A. Gronouski, Postmaster General of the United States, Douglas Dillon, Secretary of the Treasury of the United States, Defendants.

United States District Court
S. D. New York.
July 31, 1964.

Nanette Dembitz and Melvin L. Wulf, New York City, for plaintiffs.

Robert M. Morgenthau, U. S. Atty., S.D.N.Y., New York City, Eugene R. Anderson, Asst. U. S. Atty., of counsel, for defendants.

TENNEY, District Judge.

Plaintiffs move herein for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and for the appointment of a three-judge court to hear such motion pursuant to Rule 25 of the General Rules of this Court, and 28 U.S.C. § 2282 (1950) and 28 U.S.C. § 2284 (Supp.1963). Defendants move herein, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, for an order dismissing the complaint on the ground that insofar as it relates to plaintiff McReynolds, the matter is moot; and insofar as it relates to plaintiff Pappenheim, it fails to state a claim.

This action seeks to test the constitutionality of Section 4008 of Title 39 of the United States Code (39 U.S.C. § 4008 (1962)). Broadly speaking, Section 4008 requires the Postmaster General to detain all unsealed mail matter originating, printed or otherwise prepared abroad and found by the Secretary of the Treasury to be "communist political propaganda", unless such matter has been furnished pursuant to a subscription, or unless the addressee (upon being notified of the detention) requests delivery, or the Postmaster General otherwise ascertains the addressee's desire to receive the detained matter. There are certain further provisions making the statute inapplicable to mail addressed to federal agencies, public libraries, educational institutions, and their officials, and mail governed by a cultural exchange agreement.

The method of enforcement of Section 4008 is for the Bureau of Customs of the Treasury Department to determine which foreign countries are within the coverage of that Section in order to determine from which countries political propaganda, issued by or on behalf of such countries, constitutes "communist political propaganda." Twenty-six countries have been determined to be within such coverage. The Bureau of Customs maintains eleven "Foreign Propaganda Units" for the screening of communist political propaganda originating abroad. The Post Office routes mail from each of the twenty-six countries designated by Customs to the particular Unit assigned to screen such mail, which Unit then determines whether the mail matter should be deemed "communist political propaganda." The mail so read and evaluated is then returned to the Post Office, where a portion is detained and a "notice" (P.O.D. Form 2153–X) is sent to the addressee. This notice identifies the material being detained and advises the addressee that it will be destroyed within twenty (20) days unless delivery is requested. The notice includes a reply card on which the addressee may inform the Post Office whether or not he wants the particular matter or similar matter delivered in the future. A list is kept of those requesting delivery of such material so that thereafter their mail will not be detained. The Post Office mails the notice with respect to approximately 4,000 pieces of mail per month, of which approximately 3,000 are under the charge of defendant Christenberry. Several hundred issues of magazines, brochures or other matter received in the Post Office for transmittal have been designated as "communist political propaganda." The delay in the transmission of mail due to the above procedures varies from a few days to more than a month.

Some addressees are required to return the reply card in order to receive an item

of mail while other non-exempt addressees, of mail of similar content, are not. These differences in treatment are due (1) to variance in conclusions among Unit employees whether an item is "communist political propaganda", and (2) some items originating in "Communist" countries are forwarded to the United States from another country and are not included in the detentions and examinations conducted under Section 4008.

McReynolds has for some time received, unsealed through the United States mails and from a foreign country, issues of a publication entitled "The Crusaders." On or about October 1, 1963, one issue of "The Crusaders" was detained by the Post Office Department, which sent McReynolds the notice above described, asking whether or not he wanted the unsealed mail matter. McReynolds did not respond to the inquiry and the single issue of "The Crusaders" was destroyed as provided in Section 4008.

On December 17, 1963, McReynolds filed the original complaint herein. In this original complaint McReynolds sought to enjoin the enforcement of the statute or for a declaratory judgment declaring it unconstitutional. The grounds alleged were that the statute infringed his First Amendment right to freedom of speech and press and violated the due process clause of the Fifth Amendment by creating arbitrary and unreasonable classifications.

On January 22, 1964, Louis J. Doyle, General Counsel for the Postmaster General, wrote McReynolds' counsel that the filing of the complaint by McReynolds was clear evidence of McReynolds' desire to receive all mail addressed to him and that all such "communist political propaganda" would henceforth be delivered to him.

Thereafter, and on March 30, 1964, an amended complaint was filed adding the plaintiff Fritz Pappenheim and adding a request for an order expunging the names of plaintiffs from all lists or records maintained by defendants showing the names of addressees of "communist political propaganda" or of addressees of notices in regard thereto. Also added was a claim for damages for violation of plaintiffs' "constitutional rights by interferences, delays or destruction of mail" pursuant to said statute and by any listing or recording of their names as such addressees.

In both the original complaint and amended complaint, McReynolds alleges a desire to have a copy of "The Crusaders" presently in his possession transmitted to an addressee (unnamed). However, he alleges that he does not wish to be listed as the sender of such material or to subject his addressee to such listing or to the necessity of affirmatively signifying his desire to receive such mail. He further alleges that he does not want to incur the risk that the addressee may not so signify and therefore may not receive such mail, or that, if he does receive it he may not read it or may be influenced in his reading of it by the fact that it has been labeled by defendants as "communist political propaganda."

Plaintiff Pappenheim alleges that on or about December 28, 1963, he purchased a number of books and documents at a bookstore in New York City. The majority of these items would appear to have been published in one or more of the proscribed foreign countries. They were purchased for use in Pappenheim's philosophical studies or for general reading interest. He paid for them and directed the bookseller to mail them to his, Pappenheim's, home in Cambridge, Massachusetts. Thereafter, on or about January 9, 1964, Pappenheim received a notice (P.O.D. Form 2153–X) indicating that the mail addressed to him and detained pursuant to the said statute was: "Dialectics of Nature/Professor Orochev's Delusion/The First Philosophers/et al"; that this mail would be destroyed unless defendant Christenberry received the return card requesting delivery by January 29, 1964. The notice included the statement that the Post Office was "holding unsealed mail matter

addressed to you from a foreign country."

On January 15, 1964, Pappenheim wrote defendant Christenberry asking from which country the package in question was addressed and what materials were included under "et al". Receiving no reply, he again wrote said defendant on January 27, 1964, asking for an extension of time beyond January 29th for the return of the card. He received no reply, but on March 6, 1964, plaintiff received in his mail the package of materials purchased, bearing on the wrapper the return address of the bookstore where he had made such purchases. On April 21, 1964, the defendant Christenberry was directed to deliver all mail regardless of its content to Pappenheim without further inquiry.

At the time the within motions were made there was pending before a three-judge panel of this Court the case of Lamont v. Postmaster General of United States, decided on May 5, 1964, and reported in 229 F.Supp. 913 (1964). The facts, insofar as they affect an addressee, are not distinguishable from those in the instant case. However, the case at bar is distinguishable in that it allegedly involves not only mail sent from abroad, as in Lamont, but also mail deposited in the United States domestic mail. In addition, the case at bar includes a claim for damages not present in Lamont.

■ Before considering these distinguishing features, it might be advisable to consider the function and duties of the District Court when a request for appointment of a three-judge court is presented to it. In the first place, this request represents far more than a mere ministerial or procedural act. In another action, also involving the constitutionality of Section 4008, Amlin v. Shaw, 63–635–PH (S.D.Calif. Feb. 1964), the Court, which refused to convene a three-judge court and dismissed the complaint, stated:

"It is the duty of the single District Court Judge, when a three-judge court is requested, to pass on the sufficiency of the Complaint, both as to the jurisdiction, i. e., whether or not a justiciable controversy is present, and whether or not a constitutional question is involved." (citing cases)

■ A single district court judge may dismiss a complaint which seeks an injunction restraining the enforcement, operation or execution of any Act of Congress as being unconstitutional, if he decides that a substantial constitutional issue is not raised therein. It is only where he decides that a substantial constitutional issue is raised and then proceeds to decide that issue on its merits that he acts without jurisdiction. Wicks v. Southern Pac. Co., 231 F.2d 130 (9th Cir.), cert. denied, Wicks v. Brotherhood of Maintenance of Way Emp., Southern Pac. Co., 351 U.S. 946, 76 S.Ct. 845, 100 L.Ed. 1471 (1956).

This principle was only recently reiterated in Lion Mfg. Corp. v. Kennedy, 330 F.2d 833, 840 (D.C.Cir. 1964), where the Court specifically held it proper for a single judge to dismiss the complaint without convening a three-judge court. Such action by the single judge is, of course, reviewable by the Circuit Court of Appeals. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962).

As stated by Chief Judge Parker in Jacobs v. Tawes, 250 F.2d 611, 615 (4th Cir. 1957):

"[I]t would certainly be absurd to require that, in a case of which the court manifestly lacks jurisdiction, the District Judge must notify the Chief Judge of the Circuit to call in two additional judges, the Chief Judge must call them in and all the cumbersome machinery of a court of three judges must be set in motion merely to dismiss the case. If the single District Judge in dismissing the case for lack of jurisdiction commits error, the error can be corrected by appeal to the Court of Appeals without burdening the Supreme Court with a direct appeal."

With these basic principles in mind, I now proceed to the determination of whether a justiciable controversy is present in the case at bar. McReynolds and Pappenheim, as addressees of the mail material subject to the statute, are in the same position as was plaintiff in Lamont. In fact, Pappenheim is in a less favorable position, since he received the subject mail (without returning the required notice) prior to the time he instituted suit. Neither plaintiff contends, as in Lamont, that if there is no justiciable controversy between him and the Postmaster General, he should nevertheless be permitted to continue the action "in order to vindicate the rights of the many persons who are not willing or able to sue but who, like the plaintiff, have been and will be injured by this enforcement of the statute." See Lamont, 229 F.Supp. at 920. Even had such request been made, it would have to be denied upon the authority of Lamont and the cases cited therein in disposing of that contention. Both plaintiffs in the case at bar, as in Lamont, request an order directing that defendants remove their names from lists and records of persons desiring to receive "communist political propaganda." But here, again, the Court is presented with much the same facts as in Lamont, i. e., an affidavit of the General Counsel for the Postmaster General that any file kept on addressees to whom propaganda has been sent would not be made public and that no part of this file would be released to any person except upon express permission from the Post Office Department.

In the case at bar, both plaintiffs will receive the mailed material without further contact with defendants. Clearly, the same conclusion as to mootness reached in Lamont must be reached herein. In so doing I am not unmindful that plaintiffs have incorporated a claim for damages not present in Lamont. However, regardless of the validity or invalidity of the statute under which defendants acted and for which actions they are sought to be held accountable in damages, the claim is without merit and presents no justiciable issue. 28 U.S.C. § 2680 (1950).

I now pass to that phase of the case at bar which differs from Lamont, i. e., plaintiffs' standing as *depositors* of such material in the domestic mail. See Lamont, 229 F.Supp. at 920 n. 5. It is possible, as indicated in Lamont, that a suit brought by a sender could not be mooted by administrative action. However, it is not clear from the pleadings whether defendants are prepared to enforce the statute insofar as it deals with foreign communist political propaganda "upon its subsequent deposit in the United States domestic mails." The "Foreign Propaganda Units" which the Bureau of Customs maintains are for the screening of communist political propaganda originating abroad. The mail which the Post Office routes for screening is from the twenty-six foreign countries within the coverage of the statute. Nowhere is there any allegation that defendants maintain a list of the names of the senders of such mail or that there is any intention on the part of defendants to screen all second-class mail deposited in the United States domestic mails. The complaint of plaintiff Pappenheim does not necessarily support such a contention. The facts are not in dispute. He purchased and had mailed to himself certain mail matter which had originated in one of the twenty-six foreign countries referred to. He thereafter received a notice stating that the Post Office was holding mail addressed to him "from a foreign country." When he inquired from which country it had been addressed, the mail was delivered to him without further comment. It was only some time later, after he had brought the within suit, that any further action was taken by defendants, namely, instructions to defendant Christenberry to deliver all mail to Pappenheim without further inquiry. But such action, similar to that taken with respect to McReynolds, can be interpreted as a move to moot his

claim as an addressee, not as an admission that any screening of domestically-deposited mail was other than an error. Pappenheim sent mail to himself and he received it. He does not claim that he desires to send such mail to *others* in the future, as does McReynolds, but to *himself*. This desire he may exercise without further leave of defendants. He may not, however, lift himself into this Court by his own jurisdictional bootstraps. Pappenheim's cause of action herein, as it relates to his ability to send himself mail, presents neither a justiciable controversy nor a substantial constitutional question.

I come now to McReynolds, insofar as his claim relates to the deposit in the domestic mail of the material covered by the statute. Unlike Pappenheim, McReynolds does not allege that he has ever so deposited such mail. He does allege a desire to mail a copy of "The Crusaders" to "an acquaintance residing in the United States." He desires to send it by unsealed mail because of the lower rate, and to place thereon his return address.

Does this create a justiciable controversy? I think not. What will happen if and when McReynolds does mail the copy is purely speculative. There is no evidence that McReynolds' name will be listed by defendants as the sender of such mail by reason of his return address placed thereon, or that the mail will be detained, or that the addressee desires to receive such mail and, if so, whether the addressee has any compunction about so indicating.

■ Furthermore, even were it possible to spell out a controversy, co-existent with the doctrine requiring the existence of an actual controversy is the doctrine that the controversy must be "ripe" for determination. See Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961); Communist Party v. Subversive Activities Control Bd., 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961); Public Service Comm'n v. Wycoff Co., 344 U.S. 237, 243–244, 73 S.Ct. 236, 97 L.Ed. 291 (1952). That condition, in my opinion, is not met by the present case.

Accordingly, defendants' motion to dismiss the complaint is granted. Plaintiffs' motions are denied.

Settle orders on notice.