**Leif HEILBERG, Plaintiff,**

**v.**

**John F. FIXA et al., Defendants.**

**No. 41660.**

United States District Court
N. D. California, S. D.

Nov. 18, 1964.

Probable Jurisdiction Noted

Feb. 1, 1965.

See 85 S.Ct. 722.

---

Marshall W. Krause, Staff Counsel, American Civil Liberties Union of Northern California, San Francisco, Cal., Coleman Blease, Berkeley, Cal., for plaintiff.

Cecil F. Poole, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for defendants.

Before BONE, Circuit Judge, and WOLLENBERG and ZIRPOLI, District Judges.

PER CURIAM.

In this action plaintiff seeks to enjoin the enforcement of 39 U.S.C. § 4008, a statute which regulates the mailing of "communist political propaganda", and an order declaring it unconstitutional. This Court was convened pursuant to 28 U.S.C. § 2282, § 2284. Based on the record made at the hearing on the merits and facts established at prior pretrial proceedings before this Court, including the hearing on defendants' motion to dismiss which was denied, we hold that 39 U.S.C. § 4008 is unconstitutional on its face, as it infringes plaintiff's rights under the First Amendment of the Constitution of the United States, and defendants are enjoined from enforcing this statute.

In order to disclose the constitutional infirmities of the statute at issue, it is necessary to describe briefly its operation. Upon a determination by the Secretary of the Treasury that unsealed mail originating in a foreign country is "communist political propaganda", as defined in 22 U.S.C., § 611(j), The Foreign Agents Registration Act of 1938 as amended, the Postmaster General is authorized to detain the mail upon its arrival for delivery in the United States. The addressee may receive the mail if it was sent pursuant to a subscription or it is ascertained by the Postmaster General that the mail is "desired by the addressee". Mail addressed to government agencies, certain educational institutions and mail governed by cultural exchange agreements is excepted from the operation of the statute.

To implement Section 4008 the Postmaster General and the Customs Bureau maintain eleven screening points in the United States for the interception of "communist political propaganda". The Customs Bureau decides which countries' mail is to be screened and examines such mail routed through the eleven screening points to determine whether it falls within the statutory definition. When it is determined that particular mail is to be classified "communist political propaganda," the addressee is mailed POD Form 2153-X identifying the mail and advising him that it will be destroyed unless he signifies a desire to receive it by returning the form appropriately marked. The addressee may signify a desire to receive the particular mail being detained or a desire to receive the detained mail and any similar publications. A file of cards is maintained of those individuals requesting delivery in the latter case. Thereafter, upon a determination that mail is "communist political propaganda", it is mailed to the addressee without further inquiry.

In the instant case plaintiff received, on or about July 12, 1963, a letter from defendant Fixa containing POD Form 2153–X. The card notified plaintiff that the Post Office was holding a piece of unsealed mail matter entitled "A Proposal Concerning the International Communist Movement", which would be destroyed unless plaintiff returned the form approximately marked within twenty days. Plaintiff refused to sign the card and instead filed this suit. Thereafter, the General Counsel of the Post Office Department notified plaintiff that the filing of this suit constituted an expression of a desire to receive all mail that was and in the future would be detained under the provisions of Section 4008. In short, contrary to plaintiff's wishes, his name was placed on a list of those people desiring to receive "communist political propaganda".

■ Initially, defendants argue that this action has been rendered moot by the aforementioned action of the General Counsel of the Post Office. This same defense was raised, successfully, in Lamont v. Postmaster General of United States, 229 F.Supp. 913 (D.C. 1964). We cannot agree with that distinguished court. Plaintiff's mail is still subject to delay, since mail originating from designated countries must continue to be classified;[1] his name remains on the Postmaster's list of persons desiring to receive communist political propaganda; and there is no guarantee that this list will not be used to his detriment.

To render this case moot under these circumstances is to approve a device which would enable defendants to prevent any potential recipient of mail originating abroad from ever testing the constitutionality of Section 4008. We are not persuaded that the doctrine of mootness requires this result.

■■ It is a well established principle that the " * * * voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i. e., does not make the case moot." United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). Admittedly, the case may be nevertheless moot if defendant can demonstrate that the alleged wrong will not be repeated. But what is at issue here is by the very nature of the disputed statute a continuing act. Defendants are required by Section 4008 to continue to detain and classify mail which may be addressed to plaintiff in the future. The action of the General Counsel of the Post Office has caused plaintiff's name to be placed on a list which will continue to exist so long as the statute is enforceable. These are the very practices which are at issue here, and plaintiff is entitled to have the legality of these practices litigated. See United States v. W. T. Grant Co., supra, 632–633, 73 S.Ct. 897–898. .

■ Furthermore, we think contrary to the court in Lamont that plaintiff may also assert the rights of third parties. Generally, a person cannot assert the constitutional rights of others. But this is merely a rule of practice which will not be applied where the fundamental constitutional rights of third parties may be denied and it would be difficult for the persons whose rights are asserted to maintain a suit in their own right. See Barrows v. Jackson, 346 U.S. 249, 255–257, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953). Here, persons interested in receiving political matter from abroad may be deterred from bringing suit to challenge Section 4008, lest this be construed as an expression of a desire to receive "communist political propaganda". The social stigma and economic injury they may suffer is very real. We do not think a person should be made to suffer social disapprobation in order to assert his constitutional rights.

Having satisfied ourselves that this action is not moot and that plaintiff has standing to sue, both in his own right

---

1. The Lamont court assumed, presumably on the record before it, that once the government agreed no longer to detain the plaintiff's mail, there would be "unimpeded delivery". Id. at 916. The record herein is clearly to the contrary.

and as a representative of third parties, we now turn to the constitutional issue.

 The Constitution, Article I, Section 8, invests Congress with the power to regulate the postal system. See also Ex parte Jackson, 96 U.S. 727, 24 L.Ed. 877 (1877). But it is axiomatic that this power is not absolute and unfettered. Congressional power in this area is limited and conditioned by other provisions of the Constitution. Thus " * * * Congress may not by withdrawal of mailing privileges place limitations upon the freedom of speech which if directly attempted would be unconstitutional". Speiser v. Randall, 357 U.S. 513, 518, 78 S.Ct. 1332, 1338, 2 L.Ed.2d 1460 (1958). See also Hannegan v. Esquire, Inc., 327 U.S. 146, 155–156, 66 S.Ct. 456, 90 L.Ed. 586 (1946). The apparent conflict between congressional power to regulate the postal system and its impotence to enact postal legislation which tends to inhibit or deter the exercise of First Amendment rights must be resolved by balancing legitimate legislative purposes served by the statute against the restrictions imposed on rights otherwise guaranteed by the First Amendment. See e. g. Dennis v. United States, 341 U.S. 494, 510, 71 S.Ct. 857, 95 L.Ed. 1137 (1951); Schneider v. State, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939).

In striking this balance we are mindful that First Amendment rights are not absolute, but it is too late in the day to doubt the preferred status these rights enjoy in our constitutional scheme. See Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). The reasons for this preferred status were carefully explained by the Supreme Court in Thornhill v. Alabama, 310 U.S. 88, 101–102, 60 S.Ct. 736, 744, 84 L.Ed. 1093 (1940):

> "The freedom of speech and of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment. The exi-

gencies of the colonial period and the efforts to secure freedom from oppressive administration developed a broadened conception of these liberties as adequate to supply the public need for information and education with respect to the significant issues of the times. * * * Freedom of discussion, if it would fulfill its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period."

 In a recent elaboration of the so-called balancing test, the Supreme Court has indicated that only a compelling state interest could tip the scale in favor of a statute which burdens the exercise of First Amendment rights. See Sherbert v. Verner, 374 U.S. 398, 406, 83 S.Ct. 1790, 10 L.Ed.2d 965. Moreover, even if a compelling state interest were shown, the burden remains on the state " * * * to demonstrate that no alternative forms of regulation would combat such abuses without infringing First Amendment rights." Sherbert v. Verner, supra, at 407, 83 S.Ct. at 1796. With these considerations in mind, we turn now to the case at bar.

What injuries have been suffered by plaintiff? He asserts that his mail is subject to unnecessary delay because of the screening program made necessary by Section 4008. Whether this delay alone constitutes an unconstitutional abridgment of plaintiff's First Amendment rights, we need not decide. A more serious obstacle to the exercise of these rights arises out of the statute's requirement that the addressee of "communist political propaganda" indicate a "desire" to receive it. Apparently, the statute contemplates that once an addressee has manifested this desire to receive such mail, future "communist political propaganda", after it has been so classified, will not be further detained. This requires, of course, that the Post Office maintain a list of persons indicating a desire to receive this type of mail. The

statute does not itself provide for such a list, but it is difficult to see how the program could operate otherwise. Indeed, the Post Office has initiated just such a procedure in the instant case. See also Lamont v. Postmaster General of United States, supra, 229 F.Supp. at 916. At a minimum plaintiff is required by the statute to disclose a desire to receive communist political propaganda.

■ The right to distribute and receive controversial literature may require constitutional protection where disclosure may subject the distributor or recipient to social disapprobation or economic injury. In Talley v. California, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960), the Supreme Court had before it an ordinance requiring that handbills show the name of the distributor. The Court said: "There can be no doubt that such an identification requirement would tend to restrict freedom to distribute information and thereby freedom of expression.", Talley v. California, supra, at 64, 80 S.Ct. at 538. If identification of a distributor is constitutionally impermissible, a fortiori, identification of a recipient, whose rights are similarly protected [see Martin v. City of Struthers, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943)], would no less "tend to restrict * * * freedom of expression".

That a person may be reluctant to disclose his desires under the circumstances of this case is not fanciful. Similar lists under earlier non-statutory screening programs were routinely turned over to the House Committee on Un-American Activities. See Hearings before the House Committee on Un-American Activities, 85th Congress, 2d session, p. 2794 (1958). Assurances by defendant that these practices have been discontinued cannot be reasonably expected to mitigate a person's reluctance to have his name associated with "communist

political propaganda". There are no similar assurances that this information will not be made available in the future in view of the lack of a statutory requirement that information received pursuant to Section 4008 remain confidential.

Moreover, the practices made necessary by Section 4008, we are convinced, cannot help but deter the free expression of ideas. It is a fact that people who associate themselves in whatever fashion with anything "communist" are very likely to suffer social disapprobation. See Judge Feinberg's dissenting opinion in Lamont v. Postmaster General of United States, supra, 229 F.Supp. at 921.

■ A reading of the legislative history [2] makes it abundantly clear that the purpose of the new legislation was primarily to control, restrict and prevent the delivery of matter found to be communist propaganda, an infringement upon the dissemination of ideas, and, therefore, a clear and direct invasion of First Amendment territory. To overcome this infirmity in the statute the government must assert and prove both that there is a compelling state interest and that no alternative remedy would achieve the end desired without infringement. Sherbert v. Verner, supra, 374 U.S. at 406–407, 83 S.Ct. 1790. This the government has failed to do, for its alleged state interests, while "compelling" in theory, are insubstantial, illusory in fact and ignore available alternatives. They are clearly incompatible with the requirements of a free society.

The defendants have asserted as the purpose of Section 4008 that "the statute is designed to permit the non-delivery of large quantities of unsealed mail matter determined to be communist political propaganda which *most* people do not want to receive and which they should

2. "Postal Rate Revision of 1962", Hearings before the Senate Committee on Post Office and Civil Service, 87th Congress, 2d Session (1962); "Exclusion of Communist Political Propaganda From The U.S. Mails", Hearings before the House Committee on Post Office and Civil Service, 88th Congress, 1st Session (1963).

not be required to receive against their wishes" (emphasis added). In Martin v. City of Struthers, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943), the Supreme Court held unconstitutional, a handbill statute whose asserted purpose was to protect householders from annoyance and intrusion. The Court said:

"Freedom to distribute information to every citizen wherever he desires to receive it is so clearly vital to the preservation of a free society that, putting aside reasonable police and health regulations of time and manner of distribution, it must be fully preserved. The dangers of distribution can so easily be controlled by traditional legal methods, leaving to each householder the full right to decide whether he will receive strangers as visitors, that stringent prohibition can serve no purpose but that forbidden by the Constitution, the naked restriction of the dissemination of ideas." (Id. at 146–147, 63 S.Ct. at 865).

Even if this asserted purpose were to be found compelling, there is a readily available alternative which would protect the recipient's interest without infringing upon the free expression of others. The Federal regulations [39 C. F.R. 44.1(a)] provide that any person may authorize the postmaster to withhold the delivery of specifically described classes of foreign printed matter and to substitute his judgment as to classification for that of the addressee.

Another purpose asserted for Section 4008 is that it is designed to avoid a taxpayer's subsidy for the delivery of communist political propaganda. Assuming that this purpose is other than an ill-concealed assertion of the right of the government to control, via the postal rates (see Hannegan, supra), certain political ideas which would run afoul of the First Amendment, it is evident that Section 4008 as applied does not and cannot accomplish this purpose. The evidence clearly shows that the administration of Section 4008 is far more costly than the direct delivery of the mail. In short, the statute imposes on the taxpayer an even greater subsidy. In any case, the taxpayer qua taxpayer does not pay for any portion of foreign mail sent from or received in this country. The government is authorized to adjust foreign mail rates so as to avoid any net cost to the taxpayer. See 39 U.S.C. § 505.

Finally, the government asserts in its trial brief that Section 4008 fulfills some objective of foreign policy or national security. No such purpose has been proved. The program instituted by Section 4008 is substantially the same as the administrative program discontinued by President Kennedy on March 17, 1961 after consideration of the national interest in foreign policy and national security. The legislative history reveals that except for minor differences Section 4008 in effect reinstituted the discontinued program.

For the foregoing reasons this Court is satisfied that the asserted purposes of Section 4008 do not and cannot justify the burden placed on the First Amendment rights of plaintiff and members of the class he represents, and, therefore, we are compelled to declare the statute unconstitutional on its face.

The Court having found that Section 4008 of 39 U.S.C. is unconstitutional on its face, hereby orders that the defendants, their agents and employees be and they are hereby enjoined from executing or enforcing the provisions of the aforesaid statute. Plaintiff shall prepare and submit an appropriate order.