**Aline P. WEISS and Alice K. Pollitzer, Plaintiffs,**

**v.**

**John W. GARDNER, as Secretary of the Department of Health, Education and Welfare, and Bernice L. Bernstein, Regional Director, Department of Health, Education and Welfare, Defendants.**

**No. 66 Civ. 498.**

United States District Court
S. D. New York.

Argued June 7, 1966.

Decided Oct. 11, 1966.

William D. Zabel, American Civil Liberties Union, New York City (Melvin L. Wulf, New York City, on the brief), for plaintiffs.

Robert E. Kushner, Asst. U. S. Atty. for Southern Dist. of New York (Robert M. Morgenthau, U. S. Atty., Benjamin C. Flannagan and Garvin L. Oliver, Attys., Dept. of Justice, on the brief), for defendants.

Before HAYS, Circuit Judge, and BONSAL and WYATT, District Judges.

HAYS, Circuit Judge:

This is an action for a declaratory judgment declaring that Section 103(b)

of the Social Security Act Amendments of 1965, Public Law 89–97, 79 Stat. 286, 42 U.S.C. § 426 (note) (Supp. I, 1965), is unconstitutional in certain respects, and that "the use of" a clause in a prescribed form of application for hospitalization insurance under the Act is also unconstitutional. Plaintiff's application for the convening of a three-judge court was granted. See Weiss v. Gardner, 66 Civ. 498 (S.D.N.Y. May 10, 1966).

Plaintiffs have moved for summary judgment. Defendants seek dismissal of the complaint for lack of jurisdiction over the subject matter (Fed.R.Civ.P. 12(b) (1)). Defendants also contend, but without a specific written motion, that they are entitled to summary judgment and request such a judgment.

It appearing that there is no genuine issue of material fact as to the jurisdictional point, we direct summary judgment for defendants because plaintiffs have no standing to sue, there is thus no justiciable controversy, and this Court is without jurisdiction of the subject matter.

Mrs. Pollitzer and Mrs. Weiss, mother and daughter, are both entitled under Section 103(a) of the Social Security Act to hospital benefits. They were unwilling however to subscribe to the following statement which appears in the form to be filed in connection with securing these benefits:

"In connection with my application for hospital insurance entitlement I certify that I am not now, and during the last 12 months have not been a member of any organization which is required to register under the Internal Security Act of 1950, as amended, as a Communist-action organization, a Communist-front organization, or a Communist infiltrated organization." [1]

The clause was included in the application form because of the provisions of

---

1. This was the statement appearing on the form at the time of the filing of the plaintiffs' action. In its place there is now the following question:

"Are you now a member of any organization which is required to register under the Internal Security Act of 1950 as a Communist-action organization, a Communist-front organization, or a Communist-infiltrated organization?"

We will assume that plaintiffs would be equally unwilling to answer this question.

Section 103(b) of the Act. Section 103 (a) provides for coverage for the hospitalization portion of the Medicare program of about 2,700,000 persons who are over sixty-five years of age but who for various reasons are not entitled to old age payments under the regular social security system. With respect to this group, and only this group, the Act in Section 103(b) provides:

> "(b) The provisions of subsection (a) shall not apply to any individual who—
>
> (1) is, at the beginning of the first month in which he meets the requirements of subsection (a), a member of any organization referred to in section 210(a) (17) of the Social Security Act * * *."

The organizations referred to in Section 210(a) (17), 42 U.S.C. § 410(a) (17), are organizations which are registered, or are required by a final order of the Subversive Activities Control Board to register, under the Internal Security Act of 1950, as amended, 50 U.S.C. §§ 781–798, as Communist-action organizations, Communist-front organizations, or Communist infiltrated organizations.

■ As regards the request for a declaratory ruling that Section 103(b) is unconstitutional, the plaintiffs have failed completely to state any claim which would entitle them to such a ruling. It does not appear from plaintiffs' complaint or from any other papers filed in the action that plaintiffs belong or have ever belonged or contemplate belonging to any organization which is mentioned in Section 210(a) (17). No basis is suggested for believing that they run the slightest risk of being denied hospitalization under Section 103(b). It must be noted that we are not here concerned with the government's right to ask them whether or not they belong to such an organization. That problem is a different one and one we reach hereafter. Section 103(b) makes no provision for asking anybody anything. It provides merely that those who belong to certain organizations are not eligible for hospitalization. So far as appears from the pleadings, plaintiffs do not belong to those organizations. They are therefore not affected by Section 103(b).

■ Plaintiffs have no standing to attack Section 103(b) on the ground that others who do belong to the organizations referred to may be denied hospitalization. If plaintiffs could assert such rights for others with whom they have nothing relevant in common, so could any one who chose to take up the cudgels in behalf of those who are affected by the statute. If, as is generally supposed, there are a very small number of people who are now members of organizations required to register (because of Communist orientation) under the Internal Security Act of 1950, then it might even prove true in the practical application of the statute that no one at all will come within the terms of Section 103(b).

As the court said in Lamont v. Postmaster General, 229 F.Supp. 913, 917–918 (S.D.N.Y.1964), rev'd on other grounds, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965)

> "a litigant who invokes the power to annul legislation on grounds of its unconstitutionality 'must be able to show * * * that he has sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement,' Massachusetts v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923); see Poe v. Ullman, 367 U.S. 497, 502–509, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (opinion of Frankfurter, J.); Communist Party of the United States v. Subversive Activities Control Bd., 367 U.S. 1, 70–81, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961); Comment, Threat of Enforcement—Prerequisite of a Justiciable Controversy, 62 Colum. L.Rev. 106 (1962)."

See Frankel v. Gardner, 263 F.Supp 218 (E.D.Pa.) July 8, 1966.

It is quite clear then that plaintiffs fail to assert any of the basic facts which would entitle them to raise the claim that Section 103(b) is unconstitutional.

■ However, plaintiffs also urge unconstitutionality of "the use of" the ap-

plication form for hospital entitlement since it asks for a certification that the applicant does not belong to any of the organizations referred to in Section 103 (b).

In the first place it should be noted that this is not an oath case. See, for example, Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961). Section 103(b) does not provide that applicants for hospitalization will not be eligible unless they take an oath that they do not belong to the listed organizations. As far as Section 103(b) is concerned, if applicants are members they are ineligible, if they are not members they are eligible. There is no requirement in the statute that applicants state, let alone swear, whether they are members or not. The presence of the certification on the application form is merely a matter of convenience for the Social Security Administration. It will accept the certificate rather than check the record of each individual applicant.

As far as appears from the complaint, the plaintiffs could sign the certificate to which they object. They make no claim that they are members of any of the organizations in question. As with respect to the unconstitutionality of Section 103(b), plaintiffs fail to allege any facts which tend to show that they are members of a class who will suffer any injury from signing. Moreover, according to the government's affidavit, a disclaimer is taken as true and no further check is made.

If plaintiffs, in spite of the fact that they could sign the certificate object to doing so, they may strike out the certificate. An affidavit submitted on behalf of the defendant states that some applicants have done this and that in such cases the Social Security Administration has inquired of the Department of Justice as to whether the applicant is listed as a member of one of the relevant organizations. Plaintiffs call this an "investigation" and object to it. But in no real sense can they be harmed by an examination of the material on file in the Department of Justice. The word "investigation" may have acquired a sinister significance in some circles because of the activities of some congressional investigating committees. Obviously a clerk's routine check of government records is not an "investigation" in the sense in which plaintiffs use the word.

Although the plaintiffs do not claim that they themselves are in any doubt as to whether they are members of the organizations referred to in Section 103 (b), they seek to argue that the certificate suffers from vagueness, in that it does not list the organizations to which it refers. Since applicants are not asked to swear to non-membership nor indeed even required by the statute to answer any questions as to membership, they can properly state that they do not know whether they are members or not if that is the case. Having so answered the question, they would still be treated as eligible for hospitalization unless they are listed as members in the government records.

It is thus clear that not only do the plaintiffs fail to establish standing to attack the constitutionality of the statute, they also fail to show that they are in any way harmed by "the use of" the application form.

■ The Clerk is directed to enter judgment dismissing the action for lack of jurisdiction of the subject matter.

BONSAL, District Judge (dissenting):

I respectfully dissent from the holding of the majority directing summary judgment for defendants "because plaintiffs have no standing to sue, there is thus no justiciable controversy, and this Court is without jurisdiction of the subject matter."

Plaintiffs are citizens and residents of the United States, have attained the age of 65 years, and are not presently covered under other provisions of the Social Security Act (Act). Therefore, under Section 103(a) they are members of the class (estimated at 2,700,000 persons) which is entitled to file an application

and, upon approval thereof, to receive hospital insurance benefits. Section 103 (b), the constitutionality of which is here challenged, provides that such hospital insurance benefits will not be extended to persons who are members of an organization which is registered, or as to which there is in effect a final order of the Subversive Activities Control Board requiring it to register as a Communist-action, Communist-front, or Communist-infiltrated organization.

The majority conclude that since plaintiffs have not shown membership in such an organization, they have no standing to sue. It follows that, according to the majority, only a member of a Communist-action, Communist-front or Communist-infiltrated organization has standing to seek a declaratory judgment. With this I cannot agree. Neither the plaintiffs nor any other member of the class knows or can know whether or not he is listed as a member of such an organization in some Government file. The Government conceded at the hearing that no information has been disseminated to the public by the Social Security Administration listing the organizations involved. Few, if any, of the 2,700,000 potential applicants will know what organizations are included or, if they do, whether their names may be found in some Government file as members. Plaintiffs and the other members of the class have no way of knowing whether they may be damaged or not until after they file their applications.

Plaintiffs contend that absent a determination of the constitutionality of Section 103(b), the filing of applications infringes their rights of freedom of association guaranteed under the First Amendment and denies them due process under the Fifth Amendment. If they file applications and deny membership or refuse to disclaim membership, they subject themselves to inquiry or investigation by the Administration. Since in their view Section 103(b) is unconstitutional on its face, plaintiffs argue that to subject themselves to such an inquiry or investigation has "chilling" effects on their First Amendment rights and denies them due process.

In Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275 (1961), the Supreme Court had occasion to rule on the constitutionality of a Florida statute requiring all employees of the State, as a condition of their employment, to execute a written oath which included the phrase, "that I have not and will not lend my aid, support, advice, counsel or influence to the Communist Party." Cramp was requested to take the oath, but refused. He instituted an action in the Florida State courts for a judgment declaring the oath unconstitutional and for an injunction barring the State from requiring him to sign the oath or from discharging him after his failure to do so. In his complaint, Cramp asserted that he supported the Constitutions of the United States and Florida, that he was not a member nor a supporter of the Communist Party or of any other organization advocating directly or indirectly the overthrow of established forms of government, and that he was "a loyal American and [did] not decline to execute or subscribe to the aforesaid oath for fear of the penalties provided by law for a false oath."

In view of these allegations, the Supreme Court of Florida ruled that Cramp lacked standing to attack the statute on constitutional grounds. In reversing, the Supreme Court noted Cramp's contention that the statute "impinge[d] upon his constitutionally protected right of free speech and association, and that the language of the required oath [was] so vague and uncertain as to deny him due process of law." In response to the argument that Cramp's sworn complaint showed that he could not possibly sustain injury by executing the oath, the Court stated that:

"Whatever the merits of this argument, it has, we think, no application to the appellant's claim that the statutory oath is unconstitutionally vague. The vices inherent in an unconstitutionally vague statute—the risk of unfair prosecution and the potential de-

terrence of constitutionally protected conduct—have been repeatedly pointed out in our decisions. [Citations omitted.] These are dangers to which all who are compelled to execute an unconstitutionally vague and indefinite oath may be exposed. Cf. Thornhill v. [State of] Alabama, 310 U.S. 88, 96–98 [60 S.Ct. 736, 742, 84 L.Ed. 1093]."

On these grounds, the Court held that Cramp had standing to sue and that the oath was invalid as unconstitutionally vague and in violation of Cramp's rights under the Fifth Amendment. In concurring, Justices Douglas and Black found the statute unconstitutional under the First Amendment as well.

Plaintiffs' attack on Section 103(b) is not that the statute is unconstitutionally vague as in *Cramp,* but that 103(b) is unconstitutionally broad in that it contains no requirement of *scienter.* Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952). Under Section 103(b) plaintiffs or any other member of the class will be disqualified from receiving hospital insurance benefits if he discloses membership in a subversive organization or, following an investigation, is found to be a member of a subversive organization, regardless of whether he was aware of the purposes of such an organization or whether he had the specific intent to further its unlawful aims. Conditioning the right to receive hospital insurance on the willingness to submit to such an unconstitutionally broad investigation, say the plaintiffs, will deter constitutionally protected conduct.

For instance, plaintiffs assert that a senior citizen approaching 65 and not covered by Social Security will be deterred from joining an organization which states it is opposed to the war in South Vietnam for fear that it may be or may become a proscribed organization under Section 103(b). Others, rather than inquire at an office of the Administration as to the organizations covered by Section 103(b), might disassociate themselves from any unpopular group even though they are completely loyal to the Constitution of the United States. Others, who for reasons of principle do not wish to sign the disclaimer or subject themselves to an investigation, might forego applying for hospital insurance.

Under these circumstances, there seems no more basis for requiring these plaintiffs to file applications, thereby submitting themselves to investigation under an allegedly unconstitutionally broad statute, than there was for requiring Cramp to sign the Florida oath. The Supreme Court noted in *Cramp* that, it is not material whether the appellant could honestly subscribe to the oath. Here it is not material whether the plaintiffs could honestly sign the disclaimer. As in *Cramp,* plaintiffs assert not only their rights, but the rights of other persons in the class. While the court in Heilberg v. Fixa, 236 F.Supp. 405, 407 (N.D.Cal.1964), aff'd sub nom. Lamont v. Postmaster General, 381 U.S. 301, 85 S.Ct. 1493 (1965), pointed out that a person cannot usually assert the rights of others, this rule will not be applied where the fundamental constitutional rights of third parties may be denied by a statute allegedly unconstitutional on its face and it would be difficult for the persons whose rights are asserted to maintain a suit in their own right. See, Freedman v. State of Maryland, 380 U.S. 51, 56–57, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); Dombrowski v. Pfister, 380 U.S. 479, 486–487, 490–491, 85 S.Ct. 1116, 14 L.Ed. 2d 22 (1965); Barrows v. Jackson, 346 U.S. 249, 255–257, 73 S.Ct. 1031, 97 L. Ed. 1586 (1953); Thornhill v. State of Alabama, supra.

While I do not think that the plaintiffs' standing to bring this action is affected by defendants' assertion that if applicants fail to sign the disclaimer on Form SSA-18 the Administration will independently investigate their organizational status, it should be noted that in their notice to applicants, defendants urge them to be "sure to answer all the questions." On the application form, immediately above the line for applicant's signature, appears the legend, "Knowing that anyone making a false

statement or representation of a material fact on this application is liable to penalty, I certify that the above statements are true." Only after this action was commenced did plaintiffs learn that they could file applications without making the disclaimer. The Administration states that its investigation of the organizational status of an applicant who has not signed the disclaimer will be limited to checking the files of the Justice Department. The plaintiffs contend, however, that Section 103(b) is unconstitutional on its face. If so, laxity in its enforcement would not make the statute constitutional.

For the reasons stated above, plaintiffs are entitled to a decision as to the constitutionality of Section 103(b) before they file their applications so that they will know whether they are required to respond to the disclaimer in any form.

Nor is the plaintiffs' standing undercut by their failure to file applications and exhaust administrative remedies before proceeding to the court. While the Supreme Court has held that "a strong showing is required, both of inadequacy of the prescribed procedure and of impending harm, to permit short-circuiting the administrative process" (Aircraft & Diesel Equip. Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947)), it has not insisted on exhaustion of administrative remedies when these requirements are met. See, City of Chicago v. Atchison, T. & S. F. R. Co., 357 U.S. 77, 89, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958); 3 Davis, Administrative Law Treatise, § 20.04 (1958, Supp.1965).

The Social Security Administration has no authority under the Act to award hospital benefits without requiring an answer to the disclaimer or conducting an investigation into membership in a proscribed organization. The Administration must deny such benefits if membership is found, irrespective of whether it appears that the applicant is an active member or whether he knowingly subscribes to the purposes of the organization. As stated by the Supreme Court in Aptheker v. Secretary of State, 378 U.S.

500, 515, 84 S.Ct. 1659, 1668, 12 L.Ed. 2d 992 (1964):

"It must be remembered that '[a]lthough this Court will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of a statute * * *' or judicially rewriting it. Scales v. United States, * * * [367 U.S. 203] at 211 [81 S.Ct. 1469, at 1477, 6 L.Ed.2d 782]."

Neither the Administration nor the Court may read a requirement of scienter into Section 103(b).

If the plaintiffs are nonetheless required to file applications and exhaust their administrative remedies, they must forego their claim that an investigation into their associations absent a reasonable governmental interest constitutes an unwarranted invasion of their First Amendment rights. See, Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed. 2d 231 (1960); NAACP v. State of Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). In the meantime other senior citizens, unaware of their rights or unable to assert them, will disclose their organizational affiliations even though the Government, plaintiffs allege, has no right to require disclosure. Still others will be inhibited in exercising their First Amendment rights by avoiding association with controversial organizations.

In Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964), appellants were allowed to challenge a Washington loyalty oath required of teachers even though they would be entitled to a hearing before being dismissed for failure to subscribe to the oath and even though the Supreme Court of Washington had never construed the oath. In response to the argument that the Supreme Court should defer decision until the State court had had an opportunity to place a limiting interpretation on the oath, the Supreme Court stated that:

"We also cannot ignore that abstention operates to require piecemeal adjudication in many courts [Citation omitted],

thereby delaying ultimate adjudication on the merits for an undue length of time [Citations omitted], a result quite costly where the vagueness of a state statute may inhibit the exercise of First Amendment freedoms." 377 U.S., at 378–379, 84 S.Ct., at 1326.

Where, as here, the plaintiffs assert not only their own rights but the rights of others, and assert that the statute is unconstitutional on its face, such considerations take on added stature. See, Freedman v. State of Maryland, supra; Dombrowski v. Pfister, supra.

Since the majority has found that plaintiffs lack standing to maintain this action without reaching the issue of the constitutionality of Section 103(b), it is inappropriate for me to say more than that in my view a constitutional question is presented.[1] I believe that the plaintiffs have standing and that the Court should have considered the constitutional question on the merits.

---

1. Under Section 103(b), an applicant disclosing membership or found to be a member of a so-called subversive organization is disqualified from receiving benefits under Section 103(a) without regard to whether he is aware of its purposes or whether it is established that he had the specific intent to further the unlawful aims of the organization. See, Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966), where the court stated: "A law which applies to membership without the 'specific intent' to further the illegal aims of the organization infringes unnecessarily on protected freedoms. It rests on the doctrine of 'guilt by association' which has no place here." Section 103 (b) denies benefits to both knowing and unknowing members of such organizations. See, Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659 (1964).