**Alda T. REED, on Behalf of herself and all persons similarly situated, Plaintiff,**

**v.**

**John W. GARDNER, as Secretary of the United States Department of Health, Education and Welfare, Defendant.**

**Civ. No. 66–1224–TC.**

United States District Court
C. D. California.

Nov. 14, 1966.

A. L. Wirin, and Fred Okrand, of Wirin, Okrand and Sperber, Los Angeles, Cal., for plaintiff.

Manuel L. Real, U. S. Atty., for the Central District of California, by Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief of Civil Division, and M. Morton Freilich, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

Before ELY, Circuit Judge, CLARKE, Chief District Judge, and CRARY, District Judge.

PER CURIAM:

This case presents essentially a single question of law:

May eligibility for benefits under Section 103(a) of the Health Insurance for

the Aged Act (Medicare) (79 Stat. 333 (1965)) be conditioned upon nonmembership, or declaration of nonmembership, in a certain class of organizations described in Section 103(b) of the Act?

Section 103(b) (1) of the Act denies Medicare benefits to certain applicants who are members of organizations required to register under the Internal Security Act of 1950 as Communist-action, Communist-front, or Communist-infiltrated groups. The restriction is not imposed upon persons who are covered by hospital insurance provisions of the Social Security Act or of the Railroad Retirement Act.

Plaintiff, a United States citizen more than 65 years of age, is one to whom the provisions of Section 103(a) and (b) would apply. She brings this action in behalf of herself and all other persons similarly situated. Plaintiff seeks an injunction against enforcement of Section 103(b) (1) and a judgment that the statute is unconstitutional.

Plaintiff first applied for Hospital Insurance Entitlement March 23, 1966. An application form was presented to her, containing an inquiry as to whether plaintiff was then, or had been during the preceding 12 months, a member of any organization which is required to register under the Internal Security Act of 1950 as a Communist-action organization, a Communist-front organization, or a Communist-infiltrated organization. Plaintiff declined to answer the question. She likewise refused to sign a disclaimer of such membership. Plaintiff has maintained this position in later communications with representatives of the Social Security Administration.

One week before this matter was to be heard on the merits, the Social Security Administration approved plaintiff's application for benefits. The Notice of Health Insurance Entitlement sent to her contained a monition:

"The law prohibits entitlement to hospital insurance benefits for individuals who are * * * members of any organization which is registered or [required] to register under the Internal Security Act of 1950, as amended, as Communist-Action, Communist-Front, or Communist-infiltrated organizations. * * * Failure to reveal such membership * * * is misrepresentation of a material fact and subject to penalty [of] not more than a $1,000 fine or 1 year of imprisonment, or both."

There follows a list of eight organizations to which the restriction applies.

The above-quoted language does not appear on the printed form of applications for Medicare benefits. It was typewritten on plaintiff's certificate of Entitlement. The court was informed similar language has been inserted in the certificates of other persons who have declined to answer the pertinent question or to sign the disclaimer.

Plaintiff contends, *inter alia*, that Section 103(b) (1) violates her First Amendment rights of freedom of speech, assembly, and association.

The Government urges that the question need not be answered nor the disclaimer signed, that refusal to answer the question or to sign the disclaimer does not in itself bar an individual from receiving benefits if investigation discloses no affiliation with the organizations, and further, that having received her Notice of Health Insurance Entitlement, plaintiff has no standing to maintain the action.

Antithetically to the Government's representation that the question need not be answered, there appears the persistent effort of the Social Security Administration to extract an answer from the plaintiff.

Neither the applicant, nor anyone similarly situated, is informed, when applying for benefits, that he is not required to answer the question or sign the disclaimer. The Government does not, at any time during the processing of the application, indicate to an applicant who has refused to sign the disclaimer or answer the question that such is not required as a condition to the processing of the application. If the question is not

answered, as in plaintiff's case, written request is sent to the applicant pointing to the fact that the question has not been answered and requesting the information. When plaintiff protested answering the question, the Government agent to whom she spoke wrote her objection on a form and had her sign it. The agent remarked that plaintiff was the first to refuse to answer the question.

There is no evidence that all applicants in plaintiff's status who refuse to answer the pertinent question will receive any advice other than that given plaintiff or not undergo the same procedure and requirements. Furthermore, the "Notice of Health Insurance Entitlement," which certifies that plaintiff is entitled to the insurance benefits and which was issued on September 29, 1966, states, among other things, that "Failure to reveal such membership in connection with the application for the benefit herein awarded is misrepresentation of a material fact and subject to penalty." The Certificate goes on to state, "Whoever makes any false representation of a material fact in an application for determination of a right to benefits under the Social Security Act is subject to not more than a $1,000 fine or 1 year of imprisonment, or both." It would follow that if one belongs to one of the organizations listed with the Attorney General as named in defendant's Exhibit I, and does not answer the question in the application, it could well be deemed a "failure to reveal such membership" and subject the applicant to prosecution for misrepresentation of a material fact. It appears to this court that the Government is saying on the one hand that the question need not be answered and on the other that one failing to reveal such membership is subject to penalty.

We have read with interest the opinion of the three-judge court in Weiss v. Gardner, U.S.D.C., S.D. of N.Y., 263 F. Supp. 184, filed October 11, 1966, Judge Bonsal dissenting. There the plaintiff questioned the constitutionality of (1) the statute here involved, Section 103(b) (1) of the Act, and (2) "the use of" the disclaimer clause or question referred to above in the application. The action was dismissed for lack of jurisdiction.

It is to be noted that the facts in the *Weiss* case are quite different from those in the case at bar, particularly as concerns the issue of the standing of the plaintiff to question the constitutionality of Section 103(b) (1). In the *Weiss* case, the plaintiff had *not signed* an application.

In the instant case, the plaintiff, after six months delay, was approved for the benefits and sent a Notice of Entitlement thereto (Exhibit I), but there was a marked difference in her treatment as compared to that accorded applicants who had answered the question, including the long delay resulting from her refusal to answer same.

In the case of Short v. Gardner, No. 66–282, which was before this court a short time prior to the case at bar, the defendant represented to the court and plaintiff therein that the subject question need not be answered. Based on such representation and the further statement of defendant's counsel that the Department of Health, Education and Welfare was going to seek legislation to eliminate the section of the Act which prompted the objectionable question, plaintiff in the *Short* case, on March 25, 1966, stipulated to dismissal and the case was thereupon dismissed.

Having in mind all of the facts and circumstances in the case at bar, the court concludes that plaintiff Reed has been denied rights and suffered injuries, even though her application was finally approved, which there is no reason to believe will not continue as to those similarly situated and that, therefore, plaintiff Reed has standing to raise the constitutional issue.

Although not set forth hereinabove, the application for benefits asks for membership in the subject organizations for the past twelve months whereas the statute refers to membership only at the beginning of the first month of eligibility.

The Government takes the position that the Social Security Administration has no authority under the Act to award benefits to plaintiff or those similarly situated without requiring an answer to the question or a check into membership in the organizations referred to. It insists that it is required to deny benefits if membership is found whether it appears the applicant is an active member or knowingly subscribes to the purposes of the organization whatever they may be.

Six months elapsed between plaintiff's initial application and the issuance of her certificate; the Government introduced evidence showing the normal processing period is approximately 30 days. When the certificate of Entitlement was issued, plaintiff (like others in her class) was singled out for warnings noted above not contained in certificates issued to other applicants.

The Supreme Court of the United States in its opinion in Aptheker v. Secretary of State (1964), 378 U.S. 500, 516–517, 84 S.Ct. 1659, 1669, 12 L.Ed. 2d 992, quotes from N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405, as follows:

"'[I]n appraising a statute's inhibitory effect upon such rights, this Court has not hesitated to take into account possible applications of the statute in other factual contexts besides that at bar. Thornhill v. [State of] Alabama, 310 U.S. 88, 97–98 [60 S.Ct. 736, 84 L. Ed. 1093]; Winters v. [People of State of] New York, [333 U.S. 507], 518–520 [68 S.Ct. 665, at 671–672, 92 L.Ed. 840]. Cf. Staub v. City of Baxley, 355 U.S. 313 [78 S.Ct. 277, 2 L.Ed. 2d 302]. * * * The objectionable quality of vagueness and overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application. Cf. Marcus v. Search Warrants, 367 U.S. 717, 733 [81 S.Ct. 1708, 1717, 6 L.Ed.2d 1127]. These freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions.' 371 U.S., at 432–433 [83 S.Ct. 328, at page 337]."

It is to be noted that the above quotation is immediately preceded in the opinion in the *Button* case, at page 432 of that opinion, 83 S.Ct. page 337, by the statement:

"Furthermore, the instant decree may be invalid if it *prohibits* privileged exercises of First Amendment rights whether or not the record discloses that the petitioner has engaged in privileged conduct." [Emphasis added.]

■ The decision of the Supreme Court of the United States in the case of Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966), compels a holding that the statute runs counter to the First Amendment. The explicit language of this decision clearly establishes that Section 103(a) (1) and the propounding of the subject question are violative of the First Amendment to the United States Constitution.

The *Elfbrandt* case, supra, involved questions concerning the constitutionality of an Arizona statute requiring an oath from State employees pertaining to their becoming or remaining members of the Communist Party or successor or subordinate or other organization having as one of its purposes the overthrow of the government of Arizona when the employee had knowledge of the unlawful purpose.

After commenting on Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed. 2d 377; Scales v. United States, 367 U.S. 203, 229, 81 S.Ct. 1469, 6 L.Ed.2d 782; and Noto v. United States, 367 U.S. 290, 299–300, 81 S.Ct. 1517, 6 L.Ed.2d 836, the Court states:

"Any lingering doubt that proscription of mere knowing membership, without any showing of 'specific intent,' would run afoul of the Consti-

tution was set at rest by our decision in Aptheker v. Secretary of State, 378 U.S. 500 [84 S.Ct. 1659, 12 L.Ed.2d 992]. We dealt there with a statute which provided that no member of a Communist organization ordered by the Subversive Activities Control Board to register shall apply for or use a passport. We concluded that the statute would not permit a narrow reading of the sort we gave § 2385 in *Scales.* See 378 U.S., at 511, n. 9 [84 S.Ct., at 1666]. The statute, as we read it, covered membership which was not accompanied by a specific intent to further the unlawful aims of the organization, and we held it unconstitutional.

"The oath and accompanying statutory gloss challenged here suffer from an identical constitutional infirmity. One who subscribes to this Arizona oath and who is, or thereafter becomes, a knowing member of an organization which has as 'one of its purposes' the violent overthrow of the government, is subject to immediate discharge and criminal penalties. Nothing in the oath, the statutory gloss, or the construction of the oath and statutes given by the Arizona Supreme Court, purports to exclude association by one who does not subscribe to the organization's unlawful ends. Here as in Baggett v. Bullitt, supra, the 'hazard of being prosecuted for knowing but guiltless behavior' (id., [377 U.S.] at 373 [84 S.Ct. at 1323]) is a reality." (384 U.S. page 16, 86 S.Ct. page 1240)

\* \* \* \* \* \*

"Those who join an organization but do not share its unlawful purposes and who do not participate in its unlawful activities surely pose no threat, either as citizens or as public employees. Laws such as this which are not restricted in scope to those who join with the 'specific intent' to further illegal action impose, in effect, a conclusive presumption that the member shares the unlawful aims of the organization. See Aptheker v. Secretary of State, supra, [378 U.S.] at 511 [84 S.Ct. at 1666]. The unconstitutionality of this Act follows *a fortiori* from Speiser v. Randall, 357 U.S. 513 [78 S.Ct. 1332, 2 L.Ed.2d 1460], where we held that a State may not even place on an applicant for a tax exemption the burden of proving that he has not engaged in criminal advocacy.

"This Act threatens the cherished freedom of association protected by the First Amendment, made applicable to the States through the Fourteenth Amendment." (Pages 17–18, 86 S.Ct. page 1241)

\* \* \* \* \* \*

"A statute touching those protected rights must be 'narrowly drawn to define and punish specific conduct as constituting a clear and present danger to a substantial interest of the State.' Cantwell v. [State of] Connecticut, 310 U.S. 296, 311 [60 S.Ct. 900, 906, 84 L.Ed. 1213]. Legitimate legislative goals 'cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.' Shelton v. Tucker, 364 U.S. 479, 488 [81 S.Ct. 247, 252, 5 L.Ed.2d 231]." (Page 18, 86 S.Ct. page 1242)

\* \* \* \* \* \*

"A law which applies to membership without the 'specific intent' to further the illegal aims of the organization infringes unnecessarily on protected freedoms. It rests on the doctrine of 'guilt by association' which has no place here. See Schneiderman v. United States, 320 U.S. 118, 136 [63 S.Ct. 1333, 1342, 87 L.Ed. 1796]; Schware v. Board of Bar Examiners [of State of N. M.], 353 U.S. 232, 246 [77 S.Ct 752, 760, 1 L.Ed.2d 796]. Such a law cannot stand." (Page 19, 86 S.Ct. page 1242)

The Government concedes the statute would be unconstitutional *unless* it be saved by the fact Medicare benefits are a "gratuity" as to persons not covered by Social Security or Railroad Retirement.

The contention that the constitutional infirmity is cured by the gratuitous na-

ture of the benefits is answered by the Supreme Court in the case of Speiser v. Randall, 357 U.S. 513, at p. 518, 78 S.Ct. 1332, at p. 1338, 2 L.Ed.2d 1460 (1958), wherein the Court stated:

"The appellees are plainly mistaken in their argument that, because a tax exemption is a 'privilege' or 'bounty,' its denial may not infringe speech. * * * [C]onditions imposed upon the granting of privileges or gratuities must be 'reasonable.'"

See also Sherbert v. Verner, 374 U.S. 398, at p. 405, 83 S.Ct. 1790, at p. 1795, 10 L.Ed.2d 965 (1963), wherein the Court, in referring to the *Speiser* case, supra, said:

"* * * conditions upon public benefits cannot be sustained if they so operate, whatever their purpose, as to inhibit or deter the exercise of First Amendment freedoms. We there struck down a condition which limited the availability of a tax exemption to those members of the exempted class who affirmed their loyalty to the state government granting the exemption. While the State was surely under no obligation to afford such an exemption, we held that the imposition of such a condition upon even a gratuitous benefit inevitably deterred or discouraged the exercise of First Amendment rights of expression and thereby threatened to 'produce a result which the State could not command directly.' 357 U.S. 526 [78 S.Ct. 1332, at 1342]."

■ The court recognizes that it should not decide a case on an issue of constitutionality when the dispute may be properly disposed of on other grounds. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, at 347, 56 S.Ct. 466, 80 L.Ed. 688. The court has also considered defendant's contention that plaintiff must first exhaust her administrative remedies. Even if plaintiff were to exhaust administrative remedies, if they have not already been exhausted, the constitutional question would remain undecided.

■ In Public Utilities Commission of State of California v. United States, 355 U.S. 534, at pp. 539–540, 78 S.Ct. 446, at p. 450, 2 L.Ed.2d 470, the Court discusses this point and, after observing the general rule that requires the complainant first to seek relief in administrative proceedings before a remedy will be supplied by the Court, goes on to say that there was a constitutional question in that case to be decided, which issue "* * * the Commission can hardly be expected to entertain." The Court further states, at pp. 539–540, 78 S.Ct. at p. 450:

"If * * * an administrative proceeding might leave no remnant of the constitutional question, the administrative remedy plainly should be pursued."

Pursuit of administrative remedy to finality in the instant case, assuming such has not been done, would obviously leave the constitutional issue undetermined. See also City of Chicago v. Atchison, T. & S. F. R. Co., 357 U.S. 77, 89, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958), and 3 Davis, Administrative Law Treatise, Section 20.04, 1958, Supp. 1965.

As in the *Weiss* case, supra, the defendant here urges that its investigation of the organizational status of an applicant who does not answer the question or sign the disclaimer will be limited to checking the files of the Justice Department. Judge Bonsal, at page 190 of 263 F.Supp. of his dissenting opinion in the *Weiss* case, states:

"The plaintiffs contend, however, that Section 103(b) is unconstitutional on its face. If so, laxity in its enforcement would not make the statute constitutional."

The same factors apply in our case.

For the reasons stated hereinabove, the court finds plaintiff has standing to maintain this action. The court concludes that Section 103(b) (1) of the Act and the use of the subject question or disclaimer are unconstitutional as violative of the First Amendment of the

United States Constitution and that plaintiff is entitled to a permanent injunction as prayed for in the complaint.

Having determined that the statute infringes plaintiff's rights guaranteed by the First Amendment, the court need not, and does not, rule on the remaining issues raised.

This opinion shall constitute the court's findings of fact and conclusions of law, in compliance with Fed.R.Civ.P. Rule 52(a).

Counsel for plaintiff shall prepare, serve and lodge a judgment in conformance herewith.