**Arthur T. BRAMBLE, Plaintiff,**

v.

**Richard KLEINDIENST, Attorney General of the United States of America; and John E. Ingersoll, Director of the Bureau of Narcotics and Dangerous Drugs, an Agency of the Department of Justice of the United States of America, Defendants.**

**No. C–4549.**

United States District Court, D. Colorado.

April 2, 1973.

Blewitt, Bisbee & Geil by John H. Bisbee, Boulder, Colo., for plaintiff.

James L. Treece, U. S. Atty., Paul D. Cooper, Asst. U. S. Atty., Pepe J. Mendez, Special Asst. U. S. Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION

WINNER, District Judge.

This is an action for temporary injunction, declaratory judgment, permanent injunction and damages. Plaintiff has alleged jurisdiction pursuant to the provisions of 28 U.S.C. § 1343(4); 28 U.S.C. § 1346(a)(2); United States Constitution, Article I, Sec. 9, Cl. 3; United States Constitution, Amendments Five and Eight; 28 U.S.C. § 2201; Rules 57 and 65, F.R.Civ.P. The Court notes jurisdiction under 28 U.S.C. § 1346(a)(2). A three-judge court was convened, a hearing held and the panel dissolved for want of a substantial federal question, 357 F.Supp. 1025. The case is now ready for the disposition of the various pending motions.

Considering this case in the light most favorable to the plaintiff, we accept the facts stated in his Second Amended Complaint as supplemented by his Memorandum in Response. On or about the 6th day of April, 1972, the plaintiff, Bramble was arrested by law enforcement officials of the State of Colorado and the City of Boulder, and charged pursuant to the narcotics laws of the State of Colorado with possessing for sale a certain narcotic drug, namely marijuana.

On the date of his arrest, agents of the defendant Attorney General, and of the defendant, Director of the Bureau of Narcotics and Dangerous Drugs, seized a certain 1969 Volkswagen automobile, Motor Number 45760000, Serial Number 119757754, said 1969 Volkswagen automobile belonging to the plaintiff herein, on the grounds that said Volkswagen automobile had been used in violation of 21 U.S.C. § 881. On or about July 1, 1972, approximately three months after the state arrest, the plaintiff was arrested pursuant to a federal indictment charging him with illegal importation of marijuana and possession with intent to distribute marijuana. At that time, the plaintiff's car had been in federal custody approximately three months. Subsequently the charge of illegal importation was dismissed by the United States Attorney in consideration for the plaintiff's pleading guilty to possession of marijuana. The federal charges were not connected with the state charges which led to the forfeiture of the plaintiff's automobile.

The District Attorney in and for the Twentieth Judicial District of the State of Colorado deferred the plaintiff's prosecution for a period of one year running to August 17, 1973. If the plaintiff successfully completes the one year probationary period, the state's charges will be dismissed.

Subsequent to the seizure of the above described 1969 Volkswagen, the plaintiff petitioned the defendant, Attorney General of the United States, through his appointed agent, the Director of the Bureau of Narcotics and Dangerous Drugs for remission and mitigation of the forfeiture perfected pursuant to 21 U.S.C. § 881(b)(4), but that petition was denied as was a subsequent petition for reconsideration. Therefore, the plaintiff alleges that he has exhausted all his administrative remedies as prescribed by 21 C.F.R. §§ 316.71 through 316.81, and 29 C.F.R. §§ 9.1 through 9.7. Plaintiff claims three constitutional infirmities: a taking without just compensation in violation of the Fifth Amendment; cruel and unusual punishment in violation of the Eighth Amendment; and a Bill of Attainder in violation of Article I, Sec. 9, Clause 3 of the United States Constitution.

The defendants have submitted several motions supported by a single combined memorandum. The pertinent motions are the motion to dismiss and the motion for summary judgment. Basically, the issues presented are whether the plaintiff has failed to exhaust his administrative remedies and whether the Court has jurisdiction. In addition, the motion raises the question concerning the plaintiff's right to avail himself of his constitutional privilege against self-incrimination while prosecuting this lawsuit.

 The crux of this action is the forfeiture of the plaintiff's automobile, and all arguments alleging violations of his constitutional rights ground on this same rock. The operation of this law may be harsh. For this reason forfeitures are not favored; they should be enforced only when within both the letter and the spirit of the law. Farmer's & M. National Bank v. Dearing, 91 U.S. 29, 33–35, 23 L.Ed. 196; United States v. One Ford Coach, 307 U.S. 219, 226, 59 S.Ct. 861, 83 L.Ed. 1249 (1938). To say that forfeitures are not favored is not to say that they are not valid. On the contrary, forfeitures have quite an historical background. "It is well established in American jurisprudence,[2] how-

2. "For a summary of civil forfeiture under the laws of the Germanic tribes, Rome, Greece and England, see Oliver W. Holmes, The Common Law ed. Mark DeWolfe Howe (Cambridge, Mass. 1963) at 2–12.
"In England, common law forfeiture resulted from a conviction and judgment for treason, misprison of treason, praemunire, drawing a weapon on a judge, papish recusancy and in many cases a felony. Lands were forfeited at attainder but transfer of the title related back to the time of the offense thereby defeating intermediate purchasers. Chattels and goods were forfeited at the time of conviction and there was no relation back to the time of the offense. Sir William

Blackstone, Commentaries on the Laws of England, ed. Thomas M. Cooley, 4th Ed. James DeWitt Andrews (Chicago, 1899), b. ii at 267, 421; b. iv at 381, 387. See Thomas Mitchell, The Development of the Law of Forfeiture in the United States (New Haven, 1969). This common law doctrine, however, was not cognizable "on the revenue side of the exchequer." The Palmyra, 12 Wheaton (& US) 1 [6 L.Ed. 531] (1827).

In Japan, under some circumstances an innocent owner or purchaser of forfeitable goods is given a judicial remedy, Japanese Customs Law (Law #61 of 4/2/54), Article 118(1), rather than the nonjudicially reviewable administrative remedy given to an innocent owner or purchaser in the United States, 19 U.S.C. § 1618 (1964), United States v. One 1961 Cadillac, 337 F.2d 730 (6th Cir. 1964). See Mitchell, supra, at 13–14."

ever, that absent a contrary legislative expression[3] personal property may be

3. "For example, in order to work a forfeiture under certain statutes relating to the preservation of game, the owner of the seized goods must be criminally convicted of violating certain provisions of the Conservation Code, 16 U.S.C. § 171 (1964). Also see 49 U.S.C. § 782 (1964) which protects certain innocent owners from statutory forfeitures of their motor vehicles. A similar section, § 204(b), of the Liquor Law Repeal and Enforcement Act of 1935 provides for judicially supervised remission of forfeitures where the claimant acted in good faith and there is no showing of wilful negligence. Also as noted above, Congress created a discretionary administrative power to remit forfeitures, 26 U.S.C. § 7327, 19 U.S.C. § 1618 (1964). The exercise of the administrator's discretion, however, is not subject to judicial review. United States v. One 1961 Cadillac, 337 F.2d 730 (6th Cir. 1964)."

seized and statutorily forfeited without payment of any compensation even though its owner may not have engaged in any conduct which may be characterized criminal or wilfully negligent. Various Items of Personal Property v. United States, 282 U.S. 577, 581, 51 S.Ct. 282, 75 L.Ed. 558 (1931); United States v. One Ford Coupe Automobile, 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279 (1926); Goldsmith Jr.-Grant Co. v. United States, 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376 (1921); Dobbins' Distillery v. United States, 96 U.S. 395, 24 L.Ed. 637 (1877); Henderson's Distilled Spirits, 14 Wallace (81 U.S.) 44, 20 L.Ed. 815 (1871); Palmyra, 12 Wheat. (25 U.S.) 1, 6 L.Ed. 531 (1827);" McKeehan v. United States, 438 F.2d 739, 742 (6th Cir. 1971).

The Sixth Circuit Court of Appeals cited the above rule then went on to note four features in the *McKeehan* case which distinguished it from the above cited precedents. The grounds included inadequacy of notice, lawfulness of purpose of possession, the lack of any declared legislative policy that forfeiture would aid in enforcing the criminal laws or make the instrumentalities of crime more difficult or costly to obtain, and the lack of any sound administrative or revenue purpose. The Court specifically premised its conclusion on the above stated features saying: "Based on these facts, we find the imposition of forfeiture on the Appellant is penal and causes an unconstitutional deprivation of personal property 'without just compensation.' Fifth Amendment, United States Constitution." The *McKeehan* decision was closely followed chronologically by a United States Supreme Court decision entitled United States v. U. S. Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). Mr. Justice Harlan writing for the majority said:

" . . . we would first have to be satisfied that a forfeiture statute, with such a broad sweep, did not raise serious constitutional questions under that portion of the Fifth Amendment which commands that no person shall be 'deprived of . . . property, without due process of law; nor shall private property be taken for public use, without just compensation.' Even Blackstone, who is not known as a biting critic of the English legal tradition condemned the seizure of the property of the innocent as based upon a 'superstition' inherited from the 'blind days' of feudalism.

And this Court in the past has recognized the difficulty of reconciling the broad scope of traditional forfeiture doctrine with the requirements of the Fifth Amendment. See, e. g., Goldsmith-Grant Co. v. United States, supra. Cf. United States v. One Ford Coach, 307 U.S. 219, 236–237, 59 S.Ct. 861, 83 L.Ed. 1249 (1939).

" . . . the broad language of § 7302 [21 U.S.C.] cannot be understood without considering the terms of the other statutes which regulate forfeiture proceedings. An express statutory provision permits the innocent owner to prove to the Secretary of the Treasury that the 'forfeiture was incurred without willful negligence or without any intention on the part of the petitioner . . . to violate the law. . . .' 19 U.S.C. § 1618. Upon this showing, the Secretary is authorized to return the seized property 'upon such terms and conditions as he deems reasonable and just.' It is not to be presumed that the Secretary will not conscientiously fulfill this trust, and the courts have intervened when the innocent petitioner's protests have gone unheeded. United States v. Edwards, 368 F.2d 722 (CA4 1966); Cotonificio Bustese, S.A. v. Morgenthau, 74 App.D.C. 13, 121 F.2d 884 (1941) (Rutledge, J.). When the forfeiture statutes are viewed in their entirety, it is manifest that they are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise." Id. 720–722, 91 S.Ct. 1044–1045. (Footnotes omitted).

Both *McKeehan, supra,* and *Coin & Currency, supra,* were discussed and analyzed in a third case, United States v. One 1971 Ford Truck, Serial No. F25HRJ82180, 346 F.Supp. 613 (1972), which held: "It is clear that in this case the statute is imposing a penalty upon an innocent individual in no way 'involved in a criminal enterprise,' and is depriving him of his personal property without just compensation." The Court also found that the vehicle used for the illegal purpose was unlawfully possessed at the time of the offense for which it was forfeited, thus qualifying for an exemption from forfeiture. All of the three cases carve out an exception to the rule of valid forfeitures only as it would apply to an innocent person. Each of the cases were decided on an extraordinarily strong set of circumstances. The plaintiff in this case has not brought forward a similar set of facts, but rather hinges his claim for relief not on guilt or innocence as much as on his deferred prosecution under, 1971 Perm.Supp., C.R.S.1963, 40–1–306. While this does not carry the weight of a conviction, it may still qualify as demonstrating the involvement in a criminal enterprise as required by the Court in U. S. *Coin & Currency, supra.*

■ The defendants in their supporting memorandum, paragraphs 2 through 5, allege the failure of the plaintiff to exhaust his administrative remedies as the basis for a finding of no jurisdiction in this Court. This appears to be a misapprehension of the posture of the case. The plaintiff has already filed a Petition for Remission under 19 U.S.C. § 1618 [1]

1. "19 U.S.C. § 1618. *Remission or mitigation of penalties*
Whenever any person interested in any vessel, vehicle, merchandise, or baggage seized under the provisions of this chapter, or who has incurred, or is alleged to have incurred, any fine or penalty thereunder, files with the Secretary of the Treasury if under the customs laws or under the navigation laws, before the sale of such vessel, vehicle, merchandise, or baggage a petition for the remission or mitigation of such fine, penalty, or forfeiture, the Secretary of the Treasury, if he finds that such fine, penalty, or forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such fine, penalty, or forfeiture, may remit or mitigate the same upon such terms and conditions as he deems reasonable and just, or order discontinuance of any prosecution relating thereto. In order

and a Petition for Reconsideration under that statute. Thus, the case has been carried past the initial forfeiture proceedings of 19 U.S.C. §§ 1607 and 1608. The plaintiff has exhausted his administrative remedies and therefore P. U. C. of California v. United States, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958) and Reed v. Gardner, 261 F.Supp. 87 (D.C.Cal.1966) are inapposite. The courts have held that "an election to proceed by petition for remission or mitigation of forfeiture rather than by claim with the requisite bond *binds the plaintiff to the available administrative remedies; and the administrative method is exclusive.* See, United States v. One 1961 Cadillac (6th Cir., 1964) 337 F.2d 730; United States v. Gramling (5th Cir., 1950) 180 F.2d 498; United States v. Chicelli (W.D.N.Y.1935), 10 F.Supp. 900;" Jary Leasing Corporation v. United States (E.D.N.Y.1966) 254 F. Supp. 157, 159. [Emphasis added]

After the plaintiff elects the administrative remedy, the law is clear that he is foreclosed from the District Courts. The well reasoned and often cited opinion of Sixth Circuit Chief Judge Weick in United States v. One 1961 Cadillac, 337 F.2d 730, 732, 733 (1954) is comprehensive of the issue of jurisdiction and for that reason is set out below at some length.

"Since the passage of the Administrative Procedure Act they (Federal Courts) have continued to hold that the exercise of discretion by the Secretary of the Treasury or of the Attorney General in denying a petition for remission of forfeiture, is not reviewable. Associates Investment Co. v. United States, 220 F.2d 885 (C.A. 5, 1955); United States v. Gramling, 180 F.2d 498 (C.A.5, 1950); United States v. One 1957 Buick Roadmaster, [167 F.Supp. 597] supra; United States v. One 1951 Cadillac Coupe De-

Ville, 108 F.Supp. 286 (W.D.Pa.1952); United States v. One 1946 Plymouth Sedan, 73 F.Supp. 88 (E.D.N.Y.1946)

. . .

"The only remedy available to an owner or lienholder of a vehicle which has been forfeited . . . is to apply for remission or mitigation of the forfeiture. Statutory provisions for remission of forfeiture are not of recent origin. They are contained in customs laws as far back as 1790 (1 Stat. 122). The Act of March 3, 1797 (1 Stat. 506) superseded the 1790 statute and provided that the Secretary of the Treasury had the power of remission. Remission provisions were contained in various amendments to the statute and are a part of the present law.

"The purpose of the remission statutes was to grant executive power to relieve against the harshness of forfeitures. The exercise of the power, however, was committed to the discretion of the executive so that he could temper justice with mercy or leniency. Remitting the forfeiture, however, constituted an act of grace. The courts have not been granted jurisdiction to control the action of the executive, even where it is alleged, as here, in general conclusory language, that discretion has been abused.

"It [Defendant] urges that we should construe the Administrative Procedure Act so as to furnish reviews of orders of the Attorney General denying remission of forfeiture. The trouble here is that the Administrative Procedure Act expressly exempted matters committed to the discretion of an agency. We have no right to disregard this plain language."

In fact, it has been held that the District Court does not have jurisdiction under the Administrative Procedure Act (5 U.S.C. § 1009) to review the decision of the Attorney General on a petition for

---

to enable him to ascertain the facts, the Secretary of the Treasury may issue a commission to any customs officer to take testimony upon such petition: *Provided,* That nothing in this section shall be con-

strued to deprive any person of an award of compensation made before the filing of such petition. As amended June 2, 1970, Pub.L. 91–271, Title III § 301(hh), 84 Stat. 291."

remission or mitigation of a narcotics forfeiture, it being a matter "by law committed to agency discretion." United States v. One 1957 Buick Roadmaster (D.C.Mich.1958) 167 F.Supp. 597; United States v. One 1961 Cadillac Hardtop Automobile, 207 F.Supp. 693, 700 (E.D. Tenn.S.D.1962). "Until 1935, the District Court was without power to remit forfeitures in any case. In that year, Congress passed 18 U.S.C. § 646, 49 Stat. 878 (now 18 U.S.C. § 3617) which gave the District Court exclusive jurisdiction to remit or mitigate the forfeiture of vehicles used in transporting liquor in violation of the Internal Revenue laws. However, the Court's power was limited exclusively to liquor violations, ' . . . the power to remit all other forfeitures for violation of revenue laws was vested exclusively in the Secretary of the Treasury.'" United States v. One 1941 Plymouth Tudor Sedan (10th Cir.) 153 F.2d 19, 20; United States v. One 1958 Pontiac Coupe (7th Cir. 1962) 298 F.2d 421, 423. This long standing judge-made rule that the Attorney General has unreviewable discretion over petitions under 19 U.S.C. § 1618 is reaffirmed in United States v. One 1970 Buick Riviera, Ser. 494870H 910774 (5th Cir. 1972), 463 F.2d 1168. In this case, the Court went on to hold:

> "Judicial control of the Attorney General's remission and mitigation function has been exercised only when administrative officials have refused to entertain a mitigation claim on the erroneous belief that they had no statutory authority to do so, Cotonificio Bustese, S.A. v. Morgenthau, 74 U.S. App.D.C. 13, 121 F.2d 884 (1941), and the extent of judicial control has been merely to require the officials to exercise jurisdiction over the claim, not to review the official decision of the merits." Id. at 1170.

The court went on to observe in a footnote:

> "Although we recognize that agency action is unreviewable only in the exceptional case, see, generally, Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136, 149–150 (1971); Abbott Laboratories v. Gardner, 387 U.S. 136, 139–142, 87 S.Ct. 1507, 18 L.Ed.2d 681, 686–689 (1967), we do not write upon a clean slate. We find no instance where the Attorney General's discretion was subjected to judicial review; the full weight of authority lies on the other side." Id. at 1171, fn 4.

In his Memoranda in Response the plaintiff characterizes his claim as "asking the Court to determine a substantive and important matter of Fifth Amendment law . . . most significantly . . . to resolve the issue squarely posed by the Supreme Court of the United States in United States v. U. S. Coin & Currency," supra. However, a full reading of that case forecloses the argument of the plaintiff. Mr. Justice Harlan said the constitutional difficulty was with the broad scope, but then went on to say in the succeeding paragraph that the broad language could not be "understood without considering the terms of the other statutes which regulate forfeiture proceedings." U. S. Coin & Currency, supra. There has been no showing of compliance with the provisions of the second paragraph we have quoted above from U. S. Coin & Currency. The cases relied upon by plaintiff are premised on the compelling innocence of the owner involved. In the case at hand, the plaintiff does not claim complete innocence. He freely admits that there was probable cause for the forfeiture of the car because of its drug involvement. In addition to this admission, he concedes that there was criminal involvement on his part. Plaintiff makes a sweeping attack on the constitutionality of the statute and has little or no interest in the Volkswagen, and he has made no showing of clearly apparent necessity for equitable relief. See, General Motors Corp. v. Burns, 316 F.Supp. 803 (D.C.Hawaii, 1970). The Court is not dealing with a new and untested statute as has been amply demonstrated by the cases cited above. The plaintiff's

allegations must be viewed in light of the lengthy history of the statute, which covers close to two centuries. As we have mentioned before, this is a harsh statute. However, there are not only statutory grounds for relief, but, also, exemptions carved out by case law. Plaintiff has qualified for neither statutory nor judge-made relief, and he rests his case on a claim that the statute is totally unconstitutional. His argument is foreclosed by the very case, *U. S. Coin & Currency*, upon which he relies. This, alone, would be sufficient grounds for dismissal even without the second and separate grounds mentioned below.

Plaintiff claims a right to invoke his Fifth Amendment privilege in the course of discovery in this case, and to refuse to answer questions on deposition. His right to do so is the subject of an ALR annotation "Dismissing Action or Striking Testimony Where Party to Civil Action Asserts Privilege Against Self Incrimination as to Pertinent Question," 4 A.L.R.3d 545 et seq. There are relatively few cases on the precise point, perhaps because of the narrow focus of the issue. Discarding state divorce cases which constitute most of the reported decisions in the area, we find four cases in point. Chronologically, Independent Productions Corporation v. Loew's, Inc., 22 F.R.D. 266 (S.D.N.Y.1958) was the earliest case involving the assertion of Fifth Amendment privileges by plaintiff. The case was a private treble damage antitrust action by two corporate plaintiffs and the president of one plaintiff claimed the privilege. The Court held:

> "It would be uneven justice to permit plaintiffs to invoke the powers of this court for the purpose of seeking redress and, at the same time, to permit plaintiffs to fend off questions, the answers to which may constitute a valid defense or materially aid the defense.

> "Plain justice dictates the view that, regardless of plaintiff's intention, plaintiffs must be deemed to have waived their assumed privilege by

bringing this action. Moore, Federal Rules and Official Forms, 164 (1956).

. . . . . .

> "This view strikes home. Plaintiffs in this civil action have initiated the action and forced defendants into court. If plaintiffs had not brought the action, they would not have been called on to testify. Even now, plaintiffs need not testify if they discontinue the action. They have freedom and reasonable choice of action. They cannot use this asserted privilege as both a sword and a shield. Defendants ought not be denied a possible defense because plaintiffs seek to invoke an alleged privilege." Id. 276, 277.

The sword and shield metaphor was further developed in an opinion by Chief Justice Desmond and six other Justices of the New York Court of Appeals. The refinement was:

> "The privilege against self-incrimination was intended to be used solely as a shield, and thus a plaintiff cannot use it as a sword to harass a defendant and to effectively thwart any attempt by defendant at a pretrial discovery proceeding to obtain information relevant to the cause of action alleged, and possible defenses thereto. (See, also, Franklin v. Franklin, 365 Mo. 442, 283 S.W.2d 483; Hazlett v. Bullis, 12 A.D. 2d 784, 209 N.Y.S.2d 601 [2 Dept 1961]);" Laverne v. Incorp. Village of Laurel Hollow, 18 N.Y.2d 635, 272 N.Y.S.2d 780, 219 N.E.2d 294 (1966).

The District Court for the Western District of Wisconsin had the same issue before it in a civil action on a fire insurance policy wherein the insurer alleged arson by the insured as an affirmative defense. This court also verbalized its opinion in terms of the shield and sword metaphor holding:

> "Plaintiff's next contention is that the privilege against self-incrimination justifies Kisting's refusal to answer the questions involved. Plaintiffs thus seek to utilize the privilege not only as a shield, but also as a sword.

This they cannot do. A plaintiff in a civil action who exercises his privilege against self-incrimination to refuse to answer questions pertinent to the issues involved will have his complaint dismissed upon timely motion. See Stockham v. Stockham, 168 So.2d 320, 4 A.L.R.3d 539 (Fla.1964); Lund v. Lund, 161 So.2d 873 (Fla.App.1964); Levine v. Bornstein, 13 Misc.2d 161, 174 N.Y.S.2d 574 (S.Ct., Kings Co. 1958); aff'd 7 A.D.2d 995, 183 N.Y.S. 2d 868 (2d Dept.), aff'd 6 N.Y.2d 892, 190 N.Y.S.2d 702, 160 N.E.2d 921 (1959); Franklin v. Franklin, 365 Mo. 442, 283 S.W.2d 483 (1955); Ann. 4 A.L.R.3d 545. Cf. Zaczek v. Zaczek, 20 A.D.2d 902, 249 N.Y.S.2d 490 (2d Dept. 1964);" Kisting v. Westchester Fire Insurance Co., 290 F.Supp. 141, 149 (1968).

The most recent and most similar case of the four cases mentioned above was Lyons v. Johnson, 415 F.2d 540 (9th Cir. 1969). Although that case may be distinguished from the case at hand on its fact situation (the plaintiff in *Lyons, supra*, refused to cooperate in any manner) the legal reasoning is both sound and applicable.

"The naked question therefore simply was whether a plaintiff can refuse to submit to any discovery whatsoever upon his lawsuit, by asserting a Fifth Amendment privilege against any interrogation of him, and then demand that he nevertheless be permitted to continue with the legal pursuit of his claim, no matter what prejudice or possible unequal protection there might be involved to the defendant from such a court acquiescence. . .

"Her obtaining of this shield, however, could not provide a sword to her for achieving assertion of her claims against the defendants without having to conform to the processes necessary to orderly and equal forensic functioning. Clearly, the process of discovery has become increasingly recognized as one of the primary and essential elements in making federal court business flow and in contributing to the accomplishing of trial justice or settlement termination of litigation. The scales of justice would hardly remain equal in these respects, if a party can assert a claim against another and then be able to block all discovery attempts against him by asserting a Fifth Amendment privilege to any interrogation whatsoever upon his claim. If any prejudice is to come from such a situation, it must, as a matter of basic fairness in the purposes and concepts on which the right of litigation rests, be to the party asserting the claim and not to the one who has been subjected to its assertion. It is the former who has made the election to create an imbalance in the pans of the scales." Id. 541, 542.

The authorities cited by the plaintiff in his memorandum need not be discussed at length because they concern the rights of a criminal defendant only and the issue in the case at bar concerns a plaintiff in a civil action. The four decisions analyzed above lead to the primary conclusion that sanctions should be imposed against the plaintiff, and we conclude that dismissal is the appropriate sanction. For this additional reason, as well as for the reasons already discussed, we refuse to depart from the long line of cases upholding the constitutionality of this forfeiture statute, and we order that plaintiff's complaint and the action be dismissed.